James Conley **LANE** and Jeri E. Lane as Co–Administrators of the Estate of Conley Warren Lane, Deceased, **Appellants (Plaintiffs),**

v.

David **YEARSLEY,** Appellee (Defendant).

No. 96–261.

Supreme Court of Wyoming.

June 6, 1997.

Ken M. McLaughlin, Pinedale, for Appellants.

Timothy J. Bommer, Jackson, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

MACY, Justice.

Appellants James and Jeri Lane, as the co-administrators of the estate of their son, Conley Lane (Conley), appeal from the trial court's judgment which was entered after the jury returned a verdict in favor of Appellee David Yearsley.

We affirm.

## ISSUES

The Lanes present three issues for our review:

 I. Did the district court err in denying [the] appellants' motion for a new trial?

 II. Should [the] jury's verdict be set aside as being contrary to the great weight of the evidence?

 III. Did the district court err in refusing to admit testimony concerning the grief experienced by the appellants?

## FACTS

This case involves an automobile accident which occurred on December 11, 1992. Yearsley, who had three passengers with him, was driving his pickup on the road between Teton Village and Jackson. John Sutherland was driving his Ford Bronco in the opposite direction on the same road, and Conley was a passenger in that vehicle. Sutherland lost control of his vehicle, and the vehicle spun clockwise into Yearsley's lane of travel, colliding with Yearsley's vehicle. Sutherland and Conley were killed in the accident, and Yearsley and the passengers in his vehicle were injured.

On December 6, 1994, the Lanes filed a wrongful death lawsuit against Sutherland's estate, State Farm Mutual Automobile Insurance Co., and Yearsley. The estate and the insurance company were dismissed from the action after they settled with the Lanes. A jury trial was held to consider the Lanes' claims against Yearsley. The jury found that Sutherland was one hundred percent at fault in the accident and that Yearsley was zero percent at fault. The jury also determined that the Lanes did not suffer any damages as a result of the accident. The trial court modified the verdict to include a finding that the Lanes suffered damages in the amount of the expenses which they had incurred for Conley's funeral because the parties had stipulated to those damages. The Lanes appealed to this Court after the trial court entered a judgment on the amended jury verdict.

## DISCUSSION

We will first consider the issue of whether sufficient evidence supported the jury's determination that Yearsley was not at fault in the accident. If sufficient evidence supported the jury's verdict, the remainder of the Lanes' issues are moot.

The Lanes contend that the jury's determination was against the great weight of the evidence. In addressing their contention, we apply our traditional standard for reviewing claims that sufficient evidence was not presented at the trial to support the jury's verdict.

On review, this court assumes that the evidence in favor of the successful party is true. We leave out of consideration entirely the evidence presented by the unsuccessful party that conflicts with the evidence of the successful party, and we afford to the evidence of the successful party every favorable inference that may be reasonably and fairly drawn from it.

*Kadrmas v. Valley West Homeowner's Association,* 848 P.2d 826, 828 (Wyo.1993) (citation omitted). *See also Thunder Hawk By and Through Jensen v. Union Pacific Railroad Company,* 891 P.2d 773, 784 (Wyo. 1995).

 The Lanes premised their wrongful death claim on their assertions that Yearsley was negligent and that his negligence was the proximate cause of the accident which

killed their son. In order to prevail on a negligence cause of action, the plaintiffs have to prove all the necessary elements including "(1) a duty, (2) a violation thereof, (3) which violation is the proximate cause of, (4) injury to the plaintiff." *Vasquez By and Through Vasquez v. Wal–Mart Stores, Inc.*, 913 P.2d 441, 443 (Wyo.1996).

The evidence which was presented at the trial established that the road was very slick on the night of the accident. The posted speed limit in the area where the accident occurred was forty-five miles per hour. Yearsley was driving at a speed of between forty-five and fifty-six miles per hour, and Sutherland was traveling at a rate of speed which was possibly as high as sixty-nine miles per hour. Yearsley and Sutherland had both been drinking alcoholic beverages.

Robert Baldwin, a Wyoming highway patrolman, investigated the accident and testified at the trial. He stated that, in his opinion, excessive speed and alcohol consumption by both drivers and the road conditions were factors which contributed to the accident. The officer opined, however, that the predominant cause of the accident was Sutherland losing control of his vehicle and crossing over into Yearsley's lane of traffic. He said that no evidence indicated that Yearsley lost control of his vehicle prior to the impact. Officer Baldwin estimated that two and one-half seconds elapsed between the time when Sutherland lost control of his vehicle and the time when the impact occurred. James Wilson, who was Officer Baldwin's supervisor, also testified at the trial. He generally concurred with Officer Baldwin's opinions as to the causes of the accident.

John Daily, a patrol sergeant with the Teton County sheriff's office, investigated the accident and testified at the trial because he was experienced in reconstructing automobile accidents. Sergeant Daily stated that both vehicles were traveling at speeds which were higher than the posted speed limit. The sergeant concluded that Sutherland's excessive speed was the primary cause of the accident. He stated that, taking normal perception and reaction times into consideration, Yearsley could not have done anything to avoid the collision.

The Lanes rely on the evidence which showed that the road conditions were poor, that Yearsley was traveling at a speed which was higher than the posted speed limit, and that Yearsley had been drinking in arguing that the jury's determination was against the great weight of the evidence. In support of their contention, they point to the police officers' testimony which indicated that both drivers' consumption of alcohol and their excessive speeds were factors which contributed to the accident.

■ When we view the evidence in the light most favorable to Yearsley, we must conclude that sufficient evidence supported the jury's finding that Yearsley was not at fault in the accident. The jury could have reasonably concluded that, regardless of the fact that Yearsley had been drinking and was driving at a speed in excess of the legal limit, his acts were not the proximate cause of the accident. Officers Baldwin and Wilson agreed that the primary cause of the accident was Sutherland losing control of his vehicle and entering into Yearsley's lane of traffic. Sergeant Daily testified similarly, stating that the principal cause of the accident was Sutherland's excessive speed. The sergeant also stated that Yearsley could not have avoided the collision. That testimony was consistent with Yearsley's statement that he did not have time to take evasive action to avoid hitting Sutherland's vehicle. Yearsley's actions were not, therefore, the proximate cause of the accident.

The Lanes were required to prove each essential element of their negligence cause of action. Because they failed to prove causation, the jury was not mistaken when it determined that Yearsley was not at fault. Since sufficient evidence supported the jury's verdict, the trial court did not err by refusing to grant the Lanes' motion for a new trial, and any error which may have been committed by the trial court when it refused to admit evidence concerning the Lanes' damages was irrelevant. Our ruling that suffi-

cient evidence supported the jury's verdict is dispositive.

Affirmed.